The next case is Gingras v. Rosette and Think Finance, Inc. et al. Ms. Sinzdak. May it please the Court, Colleen Sinzdak on behalf of the Tribal Defendants. I will be handling the Tribal Sovereign Immunity issue. My colleague, Louis Weiner, will be handling the arbitration issue on behalf of the non-tribal defendants. I would like to reserve three minutes for rebuttal. You may. The doctrine of ex parte young is at the core of the sovereign immunity issue in this case. That doctrine is a narrow, judicially created exception to the basic rule that sovereign immunity protects tribal officials sued in their official capacity. The exception is designed to ensure that federal courts may prevent violations of federal laws. Therefore, to take advantage of the exception, a plaintiff must, at a minimum, allege a violation of a federal law that applies to the tribe. And here, two of plaintiff's claims fail out of the gate. First of all, plaintiffs are bringing a claim under Vermont- But what about the Supreme Court's decisions? Well, in Bay Mills, I understand your argument is that it's dicta. But what about we all uptribe? The Court says a suit to enjoin violations of state law by individual tribal members is permissible. So, Peel Up is an individual liability case. That's very clear from the facts. It involved fisheries, sorry, tribes fishing on state land. And the holding of the Supreme Court was that the tribes were immune, but the states could prevent particular tribe members from suing on state land by getting injunctions against them. So, I think the important point is it's an individual liability, not an official capacity suit. And similarly, the Bay Mills dicta should be understood to refer to individual capacity suits. The Court, after all, in Bay Mills was not writing on a blank slate. For over 100 years, Ex parte Young Doctrine has been applied to enforce federal laws. And indeed, that's the entire justification for the doctrine, is the need by federal courts to enforce federal laws. So, it would be quite an expansion to begin to apply that narrow exception to sovereign immunity in order to permit suits involving state laws, which when in the only case in which the Supreme Court has considered whether that was even possible, they very clearly said it is not. What about another case that gives me some pause with respect to the argument is our decision in Otoe, Missouri tribe, I mean, the panel wrote that a tribe has no legitimate interest in selling an opportunity to evade state law. And isn't that what's happening in this case, at least taking the allegations of the complaint to be true? The question of immunity is separate from the question of the merits of the allegation. No sovereign immunity inquiry has ever been made to depend on whether or not the court believes that there's a reason for the tribes being engaged in a particular conduct. And again, I would say those are allegations. What sovereign immunity depends on is Congress, and whether Congress has intended for the tribe to be sued. Now, to be clear, this isn't saying that Otoe was wrong at all. Otoe was dealing with a very different issue. If instead, if the complaint, instead of saying official capacity, had said individual capacity, would the result be different? The complaint did not say individual capacity. I understand that. What I'm asking is if it had said in their individual capacities, would the result be different? Individual capacity suits against tribal officials are not protected by tribal sovereign immunity. So we would not be having this discussion. Of course, plaintiffs brought an official capacity suit. They relied on the fact that they were bringing an official capacity suit in multiple ways below. They relied on it in making their personal jurisdiction arguments. They relied on it in making their arguments about indispensable parties. They relied on it in explaining why the RICO claim could go forward. So there's no question that here we're talking about official immunity. And there's also no question that in an official immunity, sorry, pardon me, in an official capacity suit, sovereign immunity protects tribal officials unless Ex parte Young provides the exception. And here, it simply does not. Both because some of the claims are state law claims, and state law claims are not cognizable under Ex parte Young. But also because the RICO claim, which in many ways is the linchpin of the suit against the tribal defendants, the RICO claim is under a federal law that does not apply to tribes. And Ex parte Young cannot be used as a means of lifting tribal sovereign immunity if the federal law in question does not apply to the tribes at all. We have ruled in a summary order that RICO doesn't apply to municipalities. That's correct. So if RICO, if that ruling precludes applying RICO here, aren't the tribal defendants then out of the case? They are. They are. They're out of the case. Sovereign immunity question is also out of the case. I think that depends how you want to articulate the inquiry. Whether or not the tribes are suable under RICO is intertwined with sovereign immunity, because the question in sovereign immunity is, are these particular non-consenting tribal officials liable to suit? And so the sort of antecedent question is, are they liable to suit at all? But I don't mean to disagree with your honor to the extent you're saying that the tribe bill defendants should not be in this suit because there is no viable means for them to be here, to be sued. How does, if the three defendants are out of the case for lack of personal jurisdiction because of the absence of the RICO enterprise net kind of thing, how would the tribal immunity issue survive in the case? It would not insofar as, no, no. It is certainly available to you to say that there's no personal jurisdiction as there is not and to dismiss the tribal officers on that ground. And to avoid perhaps these issues if the court wishes. Again, to the extent that the court instead wants to look to tribal sovereign immunity, I think the issue is pretty cut and dry because ex parte doesn't apply. But personal jurisdiction is also an open grounds. If there are no further questions. We're sorry, there's no time for rebuttal. Thank you. May it please the court. Louis Weiner for the Think Defendant or non-tribal defendants. The district court erred in refusing to compel arbitration under the FAA and that error manifests itself in two ways. First, the district court disregarded the arbitration agreement's clear and unambiguous delegation provision without specific challenge to the delegation clause as required by the Supreme Court's Rent-a-Center v. Jackson case. Second, having disregarded the delegation provision, the district court erred by concluding the arbitration provision was unconscionable. With respect to the Rent-a-Center v. Jackson standard, there was no specific challenge to the delegation provision as required by that case. Plaintiffs purported to challenge the delegation provision as fraudulent and alleged that the defendants planned the delegation provision to shield their widespread fraudulent practices from federal court review. What that is is an attack on the tribal review provisions, not the delegation clause. This court's decision in Campionello provides that you cannot establish a connection between the alleged fraud and the arbitration clause merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud. What plaintiffs did was basically challenge the arbitration agreement as a whole and the contract as a whole, but they never challenged the delegation provision as a whole. I read the arbitration agreement insofar as it provides that arbitral awards are reviewable by the tribal court. It doesn't say they're exclusively reviewable by the tribal court, which means that somebody who doesn't want to go to the tribal court could seek review or enforcement of an arbitral award in the federal court. That's correct, Your Honor. The review by tribal court is permissive. It says it may be reviewed by tribal court. It does not say it must or it shall. So you could have competing requests, one side wanting to go to the, one side actually taking steps to seek review in the tribal court and the other side taking steps to seek review in the federal court. Theoretically, that's correct, Your Honor. Under Section 10 of the FAA, federal court review is always available. And the standard under federal court review, we believe, addresses the concerns that were raised both by the plaintiffs and by the district court below in that if they were concerned about issues of corruption, fraud, etc., that's what Section 10 FAA review is there for. Even had they gone through tribal review, they still would have the right to Section 10 review. Those issues could have been handled at the appropriate time. The Supreme Court's VIMAR case, again, deals with that issue by saying that the appropriate place is for the court to first honor the delegation clause and then deal later, if it needs to, with these issues of enforceability of the judgment. What the court did was both engage in speculation and its ruling was premature because it front-ended its analysis. It said because of what might happen at the back end, we're not going to honor the delegation at the front end. That was clearly error. Having made that decision, though, the court further erred in finding that either under Chippewa Cree law or, as the court decided, under Vermont law, the agreement was unconscionable. It's not under application of either law. Under the Vermont law, as the court applied, the arbitration agreement was neither procedural nor substantively unconscionable. And moreover, the tribal review process does not render the delegation provision unconscionable. Again, the first thing the court should have done was assess the validity of the delegation provision, which is clear and unambiguous. And instead, it bypassed the delegation provision in favor of a front-ended analysis that looked to what it thought could be the ultimate problem with the case. But again, that decision was both speculative and premature. Your Honor, there was a Rule 28J letter that was submitted to the court yesterday advising the court of the Fourth Circuit's Dillon decision. We have filed a Rule 28J response this morning, and we wanted to point that out. I would like to point out, with respect to the Dillon decision that was issued by the Fourth Circuit, that there are three reasons why this case differs from Dillon. First, the court below found that there was no preclusive effect of federal law. That's at the special appendix, page 34. Second, the delegation clause in this case makes it clear that disputes include claims based on federal statutes. So to the extent that Dillon found that there was no opportunity to bring federal claims, the delegation clause and the arbitration clause in this case specifically permits federal claims brought under federal statutes. Third, Chippewa Cree law, pursuant to Chippewa Cree law, the court may apply federal law or the law of the state of Montana. That could be found in Section 1.9 of the Law and Order Code of the Chippewa Cree Tribe. So to the extent that there are concerns about whether this agreement permits the application of federal law, Dillon is not dispositive or binding on this court, nor is it persuasive. How do you respond to the, um, one of the, um, Amici argues that the FAA doesn't, um, apply, uh, because, um, um, commercial transactions with Indian tribes don't fit within commerce as defined within the, uh, statute. Uh, I, I, I simply, uh, well, uh, to say I disagree with it would be an understatement, but, uh, I, I don't think that that is a meritorious argument. I think that there has been— Because? Because there have been any number of cases that have held arbitration provisions to be binding in these situations. Uh, and, and in fact, uh, I don't believe that the plaintiffs raised this below. And, uh, to the extent that the Amicus is attacking the FAA, um, there's, there's no surprise on that, Your Honor. Uh, the FAA in this instance is binding. This is a matter of contract between the parties which should be upheld. Thank you. And you have not reserved a bottle of time, so— That's correct, Your Honor. Thank you, Mr. Weiner. Mr. Byrne. May it please the Court. There is no dispute that the defendants loaned money at interest rates that violated Vermont and federal law. The only question is whether they can design a system to shield themselves from any responsibility for their actions. The narrowest way to resolve this case on the arbitration issue is to follow the Hayes case. In that case, the Court held that the wholesale waiver of federal law was a sufficient basis to invalidate the entire arbitration agreement. Hayes did not reach the delegation issue because it felt that the waiver of federal law was sufficient in and of itself to take care of the, uh, to, to invalidate the arbitration agreement. Despite their contentions, there is a wholesale waiver of federal law in this case. And if you look at the appendix at page A258, the language of that agreement says that, uh, there, the, the borrowers further agree that no other state or federal law or regulation shall apply to this agreement, its enforcement, or its interpretation. That is incorporated into the arbitration agreement on page A265 that says that the arbitrator shall apply the tribal law and the terms of this agreement, including the agreement to arbitrate and the waivers included herein. So there is, under the arbitration agreement and the delegation clause, there is no application of federal law. Under Hayes, that is sufficient in and of itself to invalidate the entire arbitration agreement. Uh, the, the other issue is with section 10 and the idea, the argument that there. The point that the, did the district judge rely on that point? The district judge did rely on that point in its opinion because the district judge cited the Hayes case in its opinion and held that under Hayes, the arbitration agreement was invalid. Uh, under section 10 of the FAA, what they're claiming is that you have to wait until the end of the arbitration to, uh, invalidate the arbitration agreement. That's not so. The text of the statute says through section two and section four, that the decision is made before the arbitration. And if there are grounds at the common law to invalidate it or other reasons, then it's invalidated before you go down the path of the arbitration. So section two and section four tell you that even though there is a way to review it under section 10, there's no reason to wait. Let's just invalidate it now. The other, uh, argument that they make is that the law of the Chippewa Cree allow for the application of federal or state law. But that's not true because the agreement itself disclaims the application of both federal and state law. In addition, the Chippewa Cree law that's most specific in this case also says that there is no application of state or federal law when the, uh, when the, when  Cree law, which it is in this case. On the delegation, there's also been an argument that we waive the Hayes point, but I want to point to page 55 through 57 of the red brief where we make the argument that, uh, we quote Hayes. And we say in Hayes, the poor circuit held that an arbitration agreement created by a tribal lending operation was enforceable because a party quote may not flatly and categorically renounce the authority of the federal statutes to which it is and subject. It's quite clear that we raised this argument in our brief. And then in that, then argued by analogy to the Hayes case and said that that should, that should apply in this case. And there's no need to reach because of that, there's no need to reach the delegation clause. As far as the delegation clause itself, it's the delegation clause is both unconscionable and fraudulent. Uh, the reasons for the unconscionability are set forth in the Ryan, the Parnell and the McDonald cases, the delegation clause that they think applies is exactly the same type of language that the defendants are claiming is the delegation clause. And in Ryan and Parnell and McDonald, they have all gone and invalidated delegation clauses for that reason.    delegation clause. causes unconscionable is because the agreement eliminates all federal and state law. And that's set forth in the Ryan and the Parnell, uh, Parnell cases. Uh, in addition, section, the actual law section 10, 8, 1 0 1 preempts federal law with Chippewa when, when it's inconsistent with Chippewa Cree law or the agreement. The other aspect of this case that the defendants don't touch on at all is the allegations of fraud. Uh, our allegation is that this entire system is fraudulent and that it is one mechanism for enforcing the fraud. None of those facts have been contested. Uh, we have a serious concern that the Chippewa Cree judiciary can in fact enforce this because we've submitted, uh, interview notes from the FBI saying that a Chippewa Cree judge would not enforce Chippewa Cree law because that, uh, because he felt physically intimidated and also was fearing for his financial wellbeing. There's a serious concern as to whether, uh, there, there is any way that the law can be applied equally in the Chippewa Cree courts. The other issue, uh, he touched, uh, counseled for the, the think defendants touched on it. Uh, and he, uh, he indicated that, um, excuse me, excuse me, that the law was, it was not unconscionable either under Chippewa Cree or Vermont law, uh, but it is clearly under the Brickkicker case in the Vermont courts, this type of agreement is unconscionable and under Vermont law, the severability clause is something that is not enforced and therefore it's invalid under Vermont law. Uh, I want to touch a little bit on the, uh, the issue of tribal sovereign immunity, uh, the idea that ex parte Young deals with tribal sovereign immunities is plainly not true because it dealt with state sovereign immunity. The case that deals with this is, is the Bay Mills case. And there's nothing in Bay Mills that tells you that, that you can not apply state law. In fact, it's, it's to the opposite. What it says is the methods for enforcing state law are capacious. And, uh, it, the previously the tribal defendants had relied on the Pennhurst case, but the Pennhurst case clearly is a case about inconsistency among sovereigns or conflicts among sovereigns. Uh, and in this case, there are conflicts among sovereigns as we've outlined. There is a conflict between tribal and states. There's a conflict between federal and state law. So it's, it's clearly the, under the Pennhurst case, uh, this is clearly a case where you would want to have the mechanism of an injunctive relief to be able to deal with the issue of conflicts with the sovereigns. On the RICO argument, uh, the, the, this circuit's, uh, law under the Angelini case clearly says that it should apply to governmental units. And, uh, so under this court's precedent, anything that is a governmental unit should be, uh, should be held accountable under RICO. And this, the Supreme Court's cases in, uh, in the Don King case tell you that the, the, that we should also look to individuals and that is applicable to How are governmental units different from municipalities, which we've said don't, don't come under RICO? The, the case that's dealing with that, um, is a 2009 case. It was a summary order. And if we actually went back and looked at the briefing and it was a pro se case. So none of the arguments were even raised in that case, uh, as to whether it should actually apply to municipalities. So it's very, very weak authority for that. But I mean, the, the court categorically held that it doesn't, and it cited the ninth circuit case whose reasoning depended on the proposition that the municipality, uh, the body politic can't, can't develop the, the, the mental state necessary to satisfy the statute. Well, the ninth circuit case relied on the Supreme Court cases in Newport. And if you go back to look at Newport, what Newport was, was a reaction to Monel said that municipalities can be liable under section 1983. We're seeking, we're seeking equitable relief under RICO. So if you extend the analogy as the, and the ninth circuit didn't deal with the equitable portion of that because under ninth circuit law, they, they, they never, they never dealt with the issue of equitable relief. But if you're going to apply 1983 law, uh, writ large to this situation, what you would find is that there is sufficient, that a, that an entity has sufficient capacity for mens rea to entitle us to get equitable relief against the governmental entity, which is what Monel requires. If we're going after a minister, sorry, if the plaintiff is going after municipality. Well, what Monel says is that you can get equitable relief. You can in fact get damages against the municipality under section 1983 law. So there's sufficient, if you're going to apply 1983 law by analogy to this context, what you would say is that, uh, you can't get the punitive damages, but you can get injunctive relief under RICO against the municipality. But the point here, the other point. Our case was not talking about 1983. It was talking about, it was talking about RICO. That's correct. But what the ninth circuit case that they relied on, the Lancaster case is one that imported the Newport case, which was a reaction to the Monel case. And it's quite clear under section 19, if you're going to incorporate 1983 law and rely upon it, what you should do is look at the entire 1983 law and say that, yes, you can get injunctive relief against municipalities. But the other point that's really important here is that in, under second circuit and all law, you can get relief against individuals under RICO, right? You can do that and they can be governmental officials and they can have sufficient mens rea even for punitive damages. And the Newport case tells you that, right? The Newport case says you can get punitive damages against officials. The Don King case in the Supreme Court tells you that under RICO, it's not really relevant what capacity the individual is suited. And so when you're looking at the mens rea issue, what you have to do is say there's sufficient mens rea for the official acting either in their government or individual capacity to be able to get, to enforce RICO. And the other point on this is that we do have a motion to amend in, we do have a request to amend in the district court that was never acted on by the district court. The issue of whether you can now get under individual, you can bring an action against somebody in their individual capacity. Under second circuit law before the Lewis versus Clark case that was recently decided by the Supreme Court, it was really unclear whether you could get, bring an action against individuals in their individual capacity. The Supreme Court has now clarified that in the Lewis versus Clark case. The previous precedent in the Supreme, in the second circuit was the Chan Yun case. And there was, there was definite indication that that would not be something that would be available to us at the time that we pled the complaint. But we're also have a request for, to amend down in the district court so that we could make amendments based on whatever this court or the district court ruled. The other point though, is that the case would not end against the individuals because we also have an EFTA claim, which they conceded applies to the tribe. So this is a federal claim in which we're seeking injunctive relief in the, in the federal context. And so we would have to, we would have to be able to, that case would survive just on the EFTA claim against the tribal officials. Right. And if there's nothing further. Thank you, Mr. Byrd. Thank you. Ms. Zinsdak, you've reserved three minutes for rebuttal. Excellent. Thank you. Just wanted to clear up a few misstatements here. Again, as, as, as Judge LaValle correctly stated in a 2009 case, this court held that RICO does not apply to municipalities and there is no reason to draw a different line with respect to tribes. And when, once one accepts that the, that RICO does not apply to tribe, it is actually the entire suit that must go with respect to the tribes because personal jurisdiction was based on RICO. So the EFTA claim also must be dismissed. I also want to be clear that in the, that with respect to RICO and the individual capacity issue, the district court specifically said, oh, relied on the fact that this was an official capacity suit because the, the defendants who were sued were not the ones who entered into the agreement. And the way that the district court got around that difficulty was to say, but this is an official capacity suit, so you're actually representing those prior defendants. So that is another reason, uh, uh, that RICO just, um, does not, RICO cannot be applied to the, to the, um, tribal defendants and that the claim should be dismissed. Um, uh, just going further, uh, again, the request to amend is, is for all intents and purposes, uh, irrelevant. What you have before you is an official capacity suit that needs to be, um, dismissed. As to Bay, as to Bay Mills, um, the, uh, plaintiffs are relying on dicta, but Bay Mills made very, very clear that, um, that, that Congress controls sovereign immunity and that, uh, the sovereign immunity of the tribes is not to be, uh, diminished by states or state law. Um, that's the holding of Bay Mills and that, that is what would, should control. And, and finally, with respect to the arbitration issue, um, this case is, is not controlled by Hayes. First of all, Hayes is fourth circuit precedent, but more importantly, it is completely distinguishable. Um, Hayes, uh, sorry, pardon me, completely distinguishable precedent. Um, my, uh, the plaintiffs claimed that federal law had been completely disclaimed by this agreement, but the district court held exactly the opposite. Um, and that's a key distinction because that is, is what was one of the key facts in . . . The district court held what? Held that, that federal law does apply to, in this arbitration agreement, that that was a distinction between Hayes and, um, the agreement . . . What about the language of the arbitration agreement? Uh, uh, your adversary counsel cited passages from the arbitration agreement, which according to him, uh, um, make federal law not applicable in the arbitration agreement. The main, uh, language that he's referring to is actually not in the arbitration agreement. And so under, uh, the Supreme Court's opinion in Jackson is irrelevant. The main thing that he's referring to is, I believe, at the beginning of the contract as a whole. But in fact, the arbitration agreement, which is what, um, the district court was looking at, the arbitration agreement, uh, does not disclaim, um, federal law. And in fact, it, it says in defining disputes that one of the disputes that may be brought under the arbitration agreement are, are claims under federal law. So this is very much not, um, Hayes in which the entire, as the court held, the entire focus of the arbitration agreement was to disclaim federal law. If there, if there were a dispute about that at any event, I mean, if the arbitration agreement could be read to disallow federal law, um, the, and, and that were a basis and that was improper and made the arbitration agreement improper, uh, there's also the severability provision in the arbitration agreement. Even if one, even if one, um, strikes that provision from the arbitration agreement, the remainder of it according to the arbitration agreement remains. Absolutely. That's an excellent point. And severability is another of the key distinctions here. There's no mention of a severability, um, clause in Hayes. And in fact, the Fourth Circuit believed that, that it was not, um, severable. It raises kind of a bizarre question about the delegation clause, um, uh, which, which says that the arbitration, the arbitration should go first before court review if the basis in which the arbitrator would, would, would, would deem federal law to be inapplicable. Um, it seems kind of awkward to say, well, you have to let it go, go ahead first, uh, on the, on the basis of the arbitrators believing federal law to be inapplicable only to be told after rather than before that federal law is applicable. I, I, the arbitrator, uh, the arbitrator is fully capable of enforcing the severance clause. So to the extent that the arbitrator did find ... No, but I mean, if the, if the, if the arbitrator follows the arbitration agreement and reads the arbitration agreement as saying federal law is not applicable, the arbitrator would then proceed, conduct the entire arbitration on an invalid basis unless the federal court had previously said you have to get rid of the proposition that federal law is inapplicable. If the arbitrator erred and, and said that, that federal law did not apply, it's a little hard to, to see them making that error because no party is making that assertion. Uh, plaintiffs certainly aren't, aren't saying that federal law shouldn't apply. Defendants aren't saying that federal law shouldn't apply. So it's hard to imagine the arbitrator ... The agreement itself says tribal law shall apply. Tribal, and, and it, and it shall apply, but, but that's not, but not to the exclusion of applicable federal laws. Um, and to the extent, as I say, that the arbitrator was to find that, that, that it was to think that he, that some language in the agreement ... I thought your adversary was arguing to us to, to justify the district court's decision, the Hayes case, saying that the inapplicability of federal law by itself is sufficient reason to invalidate the entire arbitration agreement. Wasn't that the argument that was made to us? In the Hayes case ... In this case, wasn't that the argument that your adversary just made to us? Or did I misunderstand? I, I believe that he has, he mis, perhaps inadvertently misrepresented the district court as, as believing that, that federal law did not apply. And again, the district court read this contract, read this agreement as finding that federal law does apply. No, he acknowledged it. Um, and right, so, so first of all, the district court has already given a strong indication for an arbitrator, um, that, that federal law does apply. Again, to the extent you're concerned that there might be language that would mislead an arbitrator, an arbitrator could look at that, recognize that federal law must apply, and sever that language. Um, the severance clause is, is a key, is a key thing here. And, but to the extent your, your Honor was truly concerned, it would also be within the power of this court to, the, the, the, the federal courts could say, obviously federal law applies. And I think that would, um, the arbitrator would not, would not go against that. If there are no further questions? How, how, how are we entitled to do that given the delegation clause that says that, um. If you agree with me on the delegation clause, then you are 100% correct that, that it should go straight to the arbitrator. I understood you, that, that, that you might have some concerns about. Precisely. So if you have concerns about, about that, there are two things, um, that, that perhaps could ease your mind. First of all, there is review after the arbitration. So if the arbitrator did sort of, um, go a little bit rogue perhaps and, uh, decide not to apply federal law, then in that circumstance, the FAA provides a means for redress to the plaintiffs. But that is speculation. And it demonstrates that what, what plaintiffs have put before you so far is pure speculation. Maybe the arbitrator will decide incorrectly, pardon me, to, um, to, uh, apply to, to, to find that federal law doesn't apply. Maybe the tribal courts will somehow be corrupt despite the fact that the Supreme Court has consistently applied a presumption that they are not. These are speculations and they're best dealt with after an arbitration. The FAA says arbitrate first. Thank you. Thank you. Thank you both. Thank you all three of you. We'll reserve decision in this case.